410, 137, and 138 consolidated for the appellant. Ms. Bullock and Mr. Britton, have you split your time? Yes. Thank you. And for the athlete, Mr. Kearns and Mr. Brandt, have you split your time? Yes. All right. You may proceed. Good afternoon. May it please the Court, I represent plaintiff appellant Jane Doe-3. My co-counsel Sean Britton represents Jane Doe-7. We have agreed to split our time for main argument 15 minutes and 5, and then Mr. Britton will be handling the rebuttal. The taste test game played by teacher John White with at least 10 female students in two different school districts are horrific, but those horrific facts are only peripherally at issue in today's appeal. The facts alleged against the McLean defendants appellees are equally horrific and are of an intentional and affirmative nature of actively passing a known sexual harasser teacher to a neighboring school district. When John White's pedophilia broke in the newspapers, appellee John Pye, White's former superintendent from McLean, wrote an email to the teacher's union representative and he said, Please keep this information confidential, but I thought you would be interested in hearing that John White was arrested in Urbana today. I don't know the specific charges, but it appears to be much worse than the issues he faced here. I'm glad we took the steps we did to get him out of the district. I believe it was you who said he was on a path to further problems. How were the plaintiffs injured? The plaintiffs were injured by sexual penetration of John White. But there can be different causes and tort feasors that cause that injury. This email raises affirmative misconduct and willful and wanton bad acts and misfeasance in a voluntary undertaking and also shows the initiation of a dangerous condition or the creating of an imminent and foreseeable peril. The court below said that McLean defendant's passing of White, a known sexual harasser teacher, was tantamount to saying we don't care which little girl gets raped next. That's Judge Jones below. The Seventh Circuit in a federal decision under Title IX said the McLean defendant's passing White was troubling and it constituted a quiet shuffling of an abusive teacher to the next district with impunity. The court below erred in holding the public duty non-liability rule newly applicable to this fact situation. The public duty non-liability rule is a court-fashioned non-liability rule that has never been previously applied to passing a known pedophile. It arose in the context of police and fire protection services and it was a means of protecting law enforcement in their public service duties from individual liability. I don't believe it should be extended to school districts, I don't believe it should be extended to willful and wanton misconduct, and I don't believe the Thames case speaks any differently. Thames from the first district is the only application of the public duty non-liability rule to a school and it is distinct from this case, because there was mere negligence and the school district had not committed affirmative or willful and wanton bad acts. In Thames, a student brought a gun to school in a backpack unbeknownst to the school administrators. It's kind of the exact opposite. If White was unbeknownst to McLean defendants, we would not be here today. If he was like the gun in the backpack that nobody knew about, maybe they should have, maybe they should have checked out better, gone to the classroom, done something differently, if he was the gun in the backpack, we would not be here today. John White was different because a lot of people at McLean knew a lot of things about John White. Now I don't have to waste my time in this argument telling you because both parties, Urbana and McLean, just finished telling you all about what McLean knew about John White back when he was teaching at McLean. McLean's affirmative bad acts in passing John White to Urbana include, but are not limited to, the falsification of the Urbana verification of employment form. We're all lawyers, we know that a verification means sworn testimony under oath, that sure seems affirmative and intentional. Failing to investigate parental complaints of White sexual misconduct. I don't know if it's relevant in this appeal, but having represented White victims in both McLean County and Urbana, I will tell you that the parents kept coming to the McLean school district, different officials up and down the chain, principals, assistant principals, other teachers, counselors, and they kept saying he's doing all these things. He's touching little girls. Is this in the record? It is in the record. He's touching little girls under their clothes. He's having little girls touch him under his clothes. He's holding them on his lap with them straddling around his waist. And they said to the people they told, aren't these a worry? Aren't these a concern? Are these sexual? The affirmative acts also include a falsely positive letter of reference, a negotiation of a severance agreement, agreeing to omit known sexual harassment. The falsely positive letter of reference? To whom? Discovery was not done. I don't know who it was given to. I don't know if White gave it to 25 schools, one school, no schools, I just know it was given to them. But Discovery could find that out. And violation of ANCRA. I'm sorry, violation of what? ANCRA, Abused and Neglected Child Reporting Act. There was a little confusion in the defense brief saying, well, ANCRA isn't a private cause of action. Well, it may not be, and the courts in Illinois seem to have up to this point not held ANCRA to give a private cause of action. But ANCRA is very important to this case. ANCRA informs the duty, it shows the non-discretionary or the mandatory nature that would breach immunity, and it gives a context for what was going on, the intentional sense of what was going on. ANCRA is, of course, the Abused and Neglected Child Reporting Act requires timely reporting, and it's mandated any risk of abuse or suspected abuse. So certainly all the earlier parental complaints and the bad things White had done would have been required mandated reporting under ANCRA. And they were never reported. The public duty non-liability rule I don't think is applicable or need be applicable, nor should be newly applied at this juncture. But there is a special duty exception that would cover the girls, Jane Doe 3 and Jane Doe 7. It fits them. A special duty is formed when a municipality is uniquely aware of a particular danger or risk. Here McLean was uniquely and specifically aware of White's pedophilia. There must be specific acts and they must be affirmative in nature. We've discussed that. And the injury must occur for the plaintiff under the direct and immediate control of the municipality. The fourth one, the direct and immediate control, it's a common law principle, or it's a developing court principle, a special duty exception. And that particular element has been, by our Supreme Court, said to exist when the defendant or the public employee creates a position of peril, which is ultimately injurious to the plaintiff, as opposed to the situation where the plaintiff merely seeks protection from a public employee, which is not normally provided. So the Supreme Court in Moran, Leone, and Calumet City has said that that direct and immediate control has to do with the difference of the public protection situation or the creating the danger situation. And in the creating the danger situation is where Jane Doe 3 and Jane Doe 7 fit here. They're children at a school district. They're under a lot of people's direct control. They're under their parents' control. They're under Evanna's control. They're certainly under White's control. That's the reason they're vulnerable to his predation. But there was a risk that with their ultimate injury, you asked me about injury, what their injury was ultimately caused by was the risk created by McLean when they passed White. So the injury the girls suffered was created, that situation, injurious and dangerous situation, was created.  In addition to extending the public duty non-liability rule, the court below invokes Section 2204 of the Tort Immunity Act. Section 2204 reads, except as otherwise provided by statute, public employee, as such, acting within the scope of employment, is not liable for injury caused by the act or omission of another. This immunity has never been applied to immunize the passing of a known sexual harassment teacher, and it should be not applied here. This is a statement of vicarious liability. As Justice Appleton said earlier this afternoon, Justice Myerscough is a federal jurist as well. And there's a federal court regalado that says when you have joint or multiple tort cases, or you have the municipal employee's own bad act, they call it DELICT, D-E-L-I-C-T, in regalado, when you have that situation, it's not under 2204. Because then you've got your own bad act, and you've just got the situation of the joint tort cases, or both causing, or multiple tort cases causing the problem. For the first time in their briefs, I had never heard it before below, even though we argued this several times, for the first time in their briefs, the McClain defendants raised absolute immunity. I hadn't heard of it for a while, I had to look it up. But absolute immunity has been sparingly applied in certain high public official cases, when there's an overriding consideration of public policy. I hope this court will not find an overriding public policy to protect the passing of pedophiles, or to immunize that under this immunity that is for that high level executive privilege. Has Illinois just abandoned the old doctrine, and I'm going back 25 years when I was in private practice, of parents patria, that the school stood in the position of the parents? I don't think it's been abandoned, I think the school does stand in the position of the parents, but it's not used in the more recent cases that I've seen. I've never seen it abandoned. I've never seen that abandoned. Section 2201, discretionary immunity, has also been raised by the defendants. The Domofsky case takes care of that specifically. Domofsky rejected discretionary immunity because of ANCRA. ANCRA's provisions are mandatory, and that precludes discretion. Under ANCRA, you're a mandated reporter, even if there's a suspected risk of abuse,  even a touching or a verbal harassment would be abuse that would have to be mandated reported. So there isn't the type of discretion that would protect or immunize high level administrators at this point. Domofsky is interesting, it was picked up by the Supreme Court in Otago, Peron. Domofsky recognizes what is part of the issue in this case, not the whole issue, but part of the issue in this case. The foreseeability factor in serial pedophilia. As Justice Appleton spoke earlier, we are aware in this society, and if we are not aware, certainly educators and high level educators should be. These pedophiles abuse over and over again. They don't have normal sexual proclivities. They want an abnormal amount of sexual contact with a very vulnerable victim, which is a child. And so Domofsky and Otago Peron and the Huddleston case and many others have recognized that it is foreseeable, and Domofsky says it straight out, the first female victim of a teacher, teacher on female student, the first one makes foreseeable the following victims. They are all in line and foreseeable after that first one. And that raises an interesting policy issue as to what McLean was doing and what other school districts will continue to do around the country and around the state of Illinois if they are allowed to do so. McLean's reasons for getting rid of John White were to avoid messy publicity, to look good in the next school board election, to avoid litigation on behalf of their own little girls who were getting molested. And so for that reason they passed this guy next door. I would raise that that motivation is so unfavorable to the school children of Illinois and so unhelpful to the parents and children who are trying to learn that it should be cut off at the pass. That's not a motivation that we can say, well maybe they would bring discretionary high-level important things that take a lot of thinking. That's not it. They're passing this guy like a hot potato because they don't want to face him now. And they're doing it while they know that serial pedophilia will lead to more victims, exactly as it did here. He went from McLean, two girls, to Urbana, eight girls. Could it be that they were more afraid of the Illinois Educational Association having a labor claim? Absolutely. And that's who that email is to. John Pye's email is to the teachers union. And I, if I were allowed to file my motion to reconsider, had been allowed, would have joined the teachers union as a defendant. Not that that's relevant here. But that is exactly right. The teachers unions are protecting the pedophiles. And I always thought, my dad was a public school teacher in Minnesota, and I was raised to think the teachers union was to protect the students. Judy has been raised, and Judy is just... Excuse me, I apologize for interrupting late. What did the email say? It's the one you read right at the beginning? Yes. It was to the teachers union representative. Please keep this information confidential, but I thought you would be interested in hearing that John White was arrested in Urbana today. I don't know the specific charges, but it appears to be much worse than the issues he faced here. I'm glad we took the steps we did to get him out of the district. I believe it was you that said he was on a path to further problems. Thank you. Your side will have some additional time. You may finish the argument in chief. Thank you, Your Honor. May it please the Court, Sean Britton here on behalf of Jane Doe and Julie Doe 7. I join in the arguments that have been presented by my co-counsel, Ms. Bullock, concerning this case. And I wanted specifically to address the question of voluntary undertaking, which was raised in our briefs below. I think voluntary undertaking is an interesting legal concept. It's been adopted by the Illinois Courts as expressed in Restatement 324A, 2nd. And I think what's interesting about this legal concept is that if you're going to simmer down all the years to the issues in this case, what it really seems to simmer down to is this notion that an affirmative act was taken by the McLean School District to set in motion the dominoes that eventually fell and victimized these little girls. We had three different things. I think Ellen probably counts them as five, but I've been counting them as three. One is the falsification of the verification form. And whether we call it a falsification or whether we call it an inventive omission, as I think Justice Appleton may have referred to it at the beginning of all of this, either way it was a deliberate effort to mislead the history of John White. Was he paid to the end of the year? He was, I believe. Well, actually, he was suspended. There were 35 days there where he was suspended, and as we stand here right now, I'm not sure if he was suspended with pay or without pay. We just haven't got into that in discovery, Justice, unfortunately. But regardless, they filled out this verification form and sent that information out there so that any prospective employer who looked could see, well, would think, that John White had worked his entire term when he hadn't. And as was raised by defense counsel... I'm sorry, I'm going to interrupt again, and I apologize for doing so. If Urbana had called McLean and said that he worked the full school year, would they be entitled to that information? I don't know the answer to that either, Justice, because again, we haven't got into the discovery that would give me that answer. But I would assume they would, because there is a verified form that has to be filed  I mean, this is something that the Board of Education has concluded is something that other school districts should know when a teacher is being moved along. So if I went to the department, I could pull this form and look at it? Yes. It's a public record. Your Honor, what's interesting, too, also about that record, I think, is that as I think was conceded by the defendant in the previous oral arguments, that failure, well, that record would raise a red flag in any school administrator who looked at it. Because they'd see that John White hadn't worked the full term and it would raise questions. Well, why? Why is that? That's unusual. They'd go out of their way to keep these teachers on for their full term throughout the school year. The second thing, of course, would be the failing to investigate the complaints. And this is particularly frustrating to me, because while it is true that ANCRA, at least so far, does not contain a private cause of action, ANCRA is certainly evidence of a duty on the part of these school administrators to pick up the phone and call DCFS. Which, frankly, is all they had to do. All they had to do was pick up the phone and call DCFS. They didn't have to engage in an investigation at all, really. All they had to do was call DCFS and initiate that investigation. And they didn't do that. And third, of course, is the letter of recommendation. Which, by the way, was addressed, I think, to whom it may concern or to whoever just happens to be looking at this. I'm not sure that we have evidence or may ever obtain evidence as to where exactly that letter of recommendation went. But it certainly is evidence that McLean Schools, despite the knowledge they had, falsified that information for anyone who was interested who wanted to verify the employment status of this particular teacher. Those affirmative acts, I think, go toward this notion of voluntary undertaking. Those affirmative acts, I think, address many of the immunity issues that are being raised by the defendants here. I think those affirmative acts are what distinguish this case from those cases that deal with public employees who are engaged in a protective stance, from the Thames case, where the administrators are being faulted for not adequately protecting their students. This is more. This is an administration that made an extra effort to put John White out there. This isn't the bomb squad that failed to accurately cordon off the bomb. This is the bomb squad that packaged up the bomb and sent it as a gift down to Urbana with a note essentially saying happy birthday. There's nothing in the record about anyone receiving that letter of recommendation? There's nothing in the record about anyone receiving that letter of recommendation. I'm going to address the issues of the public duty rule and the Tort Immunity Act. One thing I want to have the court clearly understand, if you're making references to the federal court, in Doe 2, the 7th Circuit case, they made the comment, which I think as I sat there was particularly apropos, that Ms. Bullock made all sorts of allegations and claims of what was done and what was not done. They remarked, if you read the facts, they don't support those claims. I think it was very overstated. I don't for the second want to suggest it's a serious case. But the fact of the matter is there's not an allegation in the complaint, and it is not the case that Urbana ever got this letter of recommendation or was aware of it. There's no allegation in the complaint and it's not the case that Urbana ever made any attempt to communicate with Unit 5 except the state-mandated report that they got that indicated he worked there for three years. He was let go and their relationship ended with him in April of 2005. What does that missive from the school district to the union refer to? What activity does that refer to? Do we know? Well, yes, he was let go because of complaints of a parent in the spring of 2005. And the complaints were that he gave her a picture. It was obvious that Mr. Pye said what he did in Urbana, as it had been reported in the news, was a lot worse than anything that happened here. And do we know for a fact from the record that that's the only complaint that the school district received about Mr. White? It is not the only complaint that the school district received about Mr. White. So that missive could have been referring to something else? I don't know how much you want to go into the details, but the fact is that the other things Mr. Pye was not aware of, what Ellen was referring to, happened the previous school year and Mr. Pye had a different job. So there were other things going on the previous school year before he was let go. Don't misunderstand, but Mr. Pye didn't know about it when he wrote that. But at any rate, there was a period of time from April when he was let go at Unit 5 and he didn't contact Urbana until August. The only communication Urbana ever had was this ministerial letter that got sent out. I think that's important. Is there anything in the record that says whether the school district McLean would have answered questions from Urbana about Mr. White over the phone? There's nothing in the record one way or the other. What is in the record is that no inquiries were made. And there's nothing to indicate what information could have been shared? Or would have been shared, right. The Public Duty Rule and the Tort Immunity Act are legislative and judicial determinations of public policy, which in effect say there are certain persons, certain organizations, and certain actions for which our policy is going to be the persons who do them, the entities who are responsible for them, will not be liable to third parties, even if those actions are things which you or I or anybody would disapprove of. That's what this is. The Public Duty Rule obviously is longstanding judicial determination that policy will not impose a duty on governmental entities, including school districts, except when there's a special duty owed to a special student. That rule requires that the plaintiff be a particular plaintiff known to the defendant, and they also require that that plaintiff be under direct and immediate control of the defendant. It hardly needs to be said here that none of the Urbana-Doe children were under any control of the defendants here, and were not even known to them. It's plain in the complaint that they were total strangers. That's the requirement that's been imposed by the common law forever. There are cases which have said it doesn't matter if your acts are affirmative or passive, active or passive, it doesn't matter whether they're negligent or willful or not. The reason for this is if there's no special relationship, there is no duty. And if there's no duty, there's no liability. There's not a case in Illinois or anywhere else which has lowered the bar for requiring the direct and immediate control of a plaintiff whose risk is known. Certainly, based on the pleadings, there would be no way to suggest that the risk would not be generally known, but it's a particular risk to a particular plaintiff that's required here, and it's a plaintiff under who the defendant has direct and immediate control. There are no cases to the contrary. Mr. Bullock and Mr. Britton have cited language taken out of context in the case to suggest that direct and immediate control means two years later after they've lost all control, but that's not the case. Jane Doe, too, made that point very clearly, and all you have to do is think of the facts and realize that at the time this took place, the party that had direct and immediate control over Jane Doe's three and seven and the other children was Urbana, and that's the party that settled the claim and resolved this. Now, the suggestion that Willful and Wanton is an exception is not the case. We've cited cases in our brief that have addressed that very issue and decided to do the contrary. There are simply no exceptions to the public duty rule. The argument that this is new only means that this case is different, every case is different, but the application of the principles in this case is not new. It's uniformly been the case since the rule evolved many, many years ago. Now, if there were a rule, I just wanted to add one more thing. We've had two relatively recent Illinois Supreme Court cases, Heisberg v. Gross and Doe v. Dillon, that have both taken up the issue of whether there's going to be some sort of expansion of this general non-liability for the acts of third parties, and both times the Supreme Court has said no, we're not going beyond where we are now. They've recited the law in this case, which means that the defendants are not responsible legally for the acts of which they're charged here. Now, that's, as I say, the judicial gloss on that rule. The legislature has likewise taken up the rule in the same fashion, and that's the Tort Immunity Act. We've cited Section 2204 as the primary basis. Thank you. The statute states, except as otherwise provided by statute, a public employee acting within the scope of his employment is not liable for an injury caused by the act or omission of another person. It couldn't be more clear. Another person is not respondeat superior. We've cited several cases in the brief where respondeat superior was not the basis of the claim for liability, and in those cases the court still held that 2204 applied. If it's proximate cause, to read it the way it was suggested, that, well, Mr. Pye or the school board has proximate cause of the damages, and that's enough to get around 2204, 2204 would make no sense. If it only applies to people who aren't the proximate cause of the damages, it doesn't apply to anybody. The point of 2204 was not to set up a basis to say, okay, we're going to establish tort immunity for those people who are innocent. Tort immunity applies to those people who would otherwise be liable, and clearly the acts were those of John White that caused the damage to this child, and it doesn't say the proximate cause that caused the damage, and it doesn't say another employee, it says another person. The cases, once again, are totally consistent with that reading of 2204, and even if there were a duty, it's not going to apply to anybody. Thank you very much. Mr. Breyer. This court knows this matter has been the subject of litigation in the federal court system and was the subject of the public court wrote this. In essence, Doe 2's complaint is that defendants should have told Urbana school officials and other authorities about White's suspected harassment. Their failure to do so did not breach any duty owed to Doe 2. And the problem that they identified was this. There is no relationship that exists between McLean County, Unit 5, and the plaintiff in this case. And every aspect of this case and every aspect of any tort law that exists that's been cited in this case by both sides is the existence of some sort of relationship between the defendant and the plaintiff, whether it be a special relationship or otherwise. And the problem for the plaintiffs in this case is that there is no relationship. Nobody at Unit 5 has claimed to have had any knowledge of Doe 3 or Doe 7. There's no indication that there was any direct communication between Unit 5 and Doe 3 or Doe 7. And without that type of relationship, the courts have throughout our state, and certainly at the federal level also, found that there is absolutely no liability under tort or under any other theory that the plaintiffs have raised. That's what the Seventh Circuit found. They found with respect to all the allegations and all the theories that have been raised here that there simply is no relationship. And without that relationship, no liability exists. Counsel raised the issue regarding ANCRA and conceded that there's absolutely no liability, civil liability, for failure to comply with ANCRA. There's a mention by counsel made that this was a non-discretionary act. That's not true. That's not what the case law says. Doe v. Board of Education at 18F 2nd, 954 in the Peck case, both sides decided this. It says clearly this is a discretionary act and as a result there's no tort liability. So we're mandatory reporters. We're mandatory reporters. Teachers are mandatory reporters. And if we do not complete that duty, there's no liability? It is a discretionary act and the courts have determined that there is discretion that has to be applied in making that report. And the reasoning behind that is that if there's no discretion, in other words, if there's even a suspicion and there's a report made, there are downside ramifications to that that are set forth in the case and the brief that we file. And that's why they've said you have to use some judgment here as a teacher about whether you're going to report an act having occurred. And so that's why it's been determined by our courts as being discretionary and why no liability has been made. That's where the remedies lie with respect to this. It seems to me that when counsel was raising also this voluntary undertaking theory, it's been brief, but it's pretty clear from the cases that everybody cited in this case that at no time did the defendants undertake a duty to render services to Doe 3. And that's essential. It's an essential element that our Illinois Supreme Court has found in order to establish a claim for voluntary undertaking. Without that, there's no voluntary undertaking. My client, Dale Heitbreeder, never assumed a duty to protect Jane Doe 3. There's no indication she relied upon him to protect her. The Isenberg case is clear. And I think the Isenberg case was cited at length by the Seventh Circuit for a reason. Because in the Isenberg case, there were parties, partners in a business association. One of the partners had indicated he was going to shoot or kill the other partner. Some of the partners knew. They didn't tell the intended target of this. And the court said we're not going to expand liability in this area. We're not going to indicate there is some duty that runs from an independent third party to another to prevent some criminal act. Isenberg is what takes voluntary undertaking out of play for the plaintiffs in this case. We've cited in our case this tort of passing. What Isenberg says is if there is no special relationship, we're not going to impose this duty on complete strangers. Counsel has also indicated that there is a restatement, section 324A also applies to this case. Again, under that restatement, while it has been adopted, the plaintiff must show that the defendants undertook to render services to the plaintiff. They simply cannot show this. It's been narrowly construed and I don't believe this court is or should expand that liability where other courts have clearly indicated and looked at this issue, certainly the 7th Circuit did, and found there is absolutely no basis to expand liability. Keep in mind that Dale Heidgreter and the other defendants in this case are 60 miles away. There's no way for them to have any relationship with anybody at Urbana School District. What plaintiffs want to impose on us, even though they have a valid claim against the Urbana School District, that they pursued for failure to discover the acts that were taking place by Mr. White. What they're trying to do here is to find that there is some obligation for somebody 50 miles away to prevent a criminal act. I think it's raised the issue regarding passing, that this should be a new tort this court should recognize. The 7th Circuit did not want to recognize it. No other courts recognized it. The plaintiffs haven't cited any case law where any courts accepted this tort of passing. And the 7th Circuit found that the passing claim was simply a reiteration of the plaintiff's anchor claim, for which there is no civil liability. And so there's no cause of action that's been stated. Plaintiff refers in their brief to the proposition both plaintiffs do to the proposition that there were bad acts. These bad acts somehow should impose liability. The Borrella case that we have cited makes it clear that there's no private cause of action. In that same argument, finding an implied private cause of action for failure to report did not lead to an enhanced enforcement of reporting under the Act. There's been mention of the verification of the employment experience. While there's no allegation of that with respect to Mr. Heitgreter, with respect to the other defendants, there's no verification with respect to the intervening criminal act. I think the problem for the plaintiffs in this case is they cannot draw that nexus in their pleadings, because there's no evidence and no basis for finding it, that this employment experience verification form would have somehow been some nexus or caused some nexus between the criminal misconduct of Mr. White. There's no indication, I think, as the Court has found, that Doe 3 or Doe 7 was aware of this or anyone was aware of it over at Urbana. Lastly, plaintiffs have raised foreseeability as an issue in this case, that it simply is foreseeable that White was going to act again, that he was going to do another criminal act. The factors of foreseeability, likelihood of injury, magnitude of the burden and consequences of placing that burden on the defendant. The cases that we have cited, both sides have cited, indicate clearly that in those circumstances where this foreseeability test has been applied, the defendant is in control of the plaintiff and those other tortfeasors that have harmed the plaintiff at the time. The Hoff case, the Ortega-Peron case and the Hernandez case. In essence, there has to be this special relationship. There is no special relationship, and as a result, the courts are not going to impose this burden on somebody 60 miles away. Thanks very much. Thank you, Counsel. Rebuttal, please, Mr. Kreeton. Briefly, Your Honors. To begin, it is true, we do not have any idea whether the letter of recommendation was ever actually seen or reviewed by Urbana Public Schools. However, again, we've not had the opportunity to gauge in discovery to determine what impact that has. I think this actually comes back around then to the way Mr. Brandt was ending his argument discussing the issue of foreseeability, discussing the fact that we don't know what Urbana knew or didn't know. I think all of those things go to a question of causation, all of which is a question of fact, all of which are things for a jury to conclude or decide after this matter has gone through discovery, after the facts are able to be laid out for a jury to consider. We're not there. We're here now asking the question whether the State of Illinois should hold administrators in the claim responsible for the affirmative acts they took to set Mr. White down out into the public where he could be exposed to other children. Mr. Kearns also raised the question of control, and I think this also came up with Mr. Brandt's argument. I think where this issue of control and where this gets confused is we have the public duty doctrine and then we have the special duty exception to the public duty doctrine. Our argument initially here is that the public duty doctrine simply shouldn't apply. It shouldn't be applied to this situation where affirmative steps are being taken versus protective steps that generally are the steps that are being immunized under the public duty doctrine. However, if the public duty doctrine is applied to our fact scenario, then the special duty exception should apply. And I think significantly the lower court found that the first three of the four steps for establishing a special duty exception are present. Those are that the governmental actor was aware of the conduct, the allegations involved acts or omissions, and the acts were affirmative or willful. The fourth step, control, is what the underlying trial court did not find. And I think the trial court was in error there because Moran and other cases that we have cited establishes that control doesn't apply where the defendant has actually called the plaintiffs into a position of peril. And then this goes back to all of the arguments raised before under voluntary undertaking. This notion that by creating the problem, the administration in McLean can't just wipe their hands of it and say, well, it's not our problem anymore. They've set in action a turn of events that has eventually resulted in the victimization of a plaintiff. Admittedly, a plaintiff that McLean never met. However, I cited in my brief, I know Ms. Bullock cited, I believe in hers, the Fry case. Embarrassingly, I miscited the Fry case in my brief. I indicated that it was a case where voluntary undertaking had been found. In fact, in that case, the court had not found voluntary undertaking under that very specific set of circumstances where pharmaceuticals were apparently labeled and then not labeled the way that the plaintiffs had wanted the labeling to occur. However, the Fry case cites Nelson, an Illinois Supreme Court case, and reiterates the fact that once a voluntary undertaking has been taken, that the tortfeasor is responsible for the end result of that voluntary undertaking no matter how distant it is, as long as it's reasonably foreseeable. As long as there's causation there that makes it a reasonably foreseeable event. And I certainly think it's reasonably foreseeable that someone who is a pedophile, now being released out to the public, may very well harm again when he finds re-employment. That affirmative act is what creates the relationship that Mr. Grant finds lacking. Again, we agree there is no... Well, I think what there's evidence in the record of is that the McLean Public Schools were concerned enough about John White's conduct that they suspended him for a period of 35 days, which is an extraordinary thing for a school district to do. They were not, however, concerned enough about his conduct to not write a glowing letter of responsibility to the Board of Education, and to otherwise take steps to protect potential people that Mr. White might be exposed to. Thank you, Mr. Britton. Time is up. We will take this matter under advisement.